# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **RUSSELL ALAN LASHLEY, JR.,** )<br>)<br>  **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**CHS AL, LLC D/B/A YESCARE,** )<br>**CORP.,** )<br>)<br>  **Defendant.** ) | <br><br><br><br><br>**CIVIL ACTION NO.: _____**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW,** the Plaintiff, Russell Alan Lashley Jr., by and through the undersigned counsel of record, and alleges the following:

## PRELIMINARY STATEMENT

At all times relevant to this action, Plaintiff Russell Alan Jr. Lashley, Jr., was in the custody of the Alabama Department of Corrections, being housed and transferred between Ventress, Bullock, and Elmore Correctional Facilities. is currently in the custody of the Alabama Department of Corrections. After being brutally assaulted and attacked by fellow inmates, Plaintiff sustained substantial physical injuries. He was provided little-to-no medical care for several months that caused undue pain and suffering and permanent injuries. This action seeks redress for Defendant's violation of Plaintiff's constitutional rights, pursuant to 42 U.S.C. § 1983 and Alabama law.

1

## PARTIES

1. **Plaintiff Russell Alan Lashley, Jr. ("Plaintiff" or "Mr. Lashley")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant to this action, Plaintiff was in the custody of the Alabama Department of Corrections ("ADOC").

2. **Defendant CHS, LLC D/B/A YesCare Corp. ("Defendant" or "YesCare")** was, at all times relevant to this action, contracted by the ADOC to provide necessary medical care to incarcerated individuals in ADOC's custody. YesCare assumed and performed an essential duty of the State of Alabama through its agreement to provide constitutionally adequate and necessary care to inmates in ADOC custody. YesCare's contract to begin providing medical care to those in the ADOC's custody began April 1, 2023.

## JURISDICTION AND VENUE

3. This court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1343(a)(4), and 42 U.S.C. § 1988(a), as this action seeks redress for a violation of Plaintiff's Eighth and Fourteenth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367(a), as they arise out of the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

### I. Medical Neglect

6. Plaintiff has unfortunately been the victim of several violent, physical attacks during his confinement in the ADOC.

7. At all times relevant to this action, Plaintiff was transferred between Ventress, Bullock, and Elmore Correctional Facilities. During his confinement at all three facilities, Defendant was the exclusive provider of medical services under a contractual agreement with the State of Alabama.

8. In early June of 2023, Plaintiff was being housed at Ventress. Around this time, Plaintiff received a food package sent to him by his mother.

9. An unidentified inmate took Plaintiff's food package away from him. When Plaintiff went to get his food package back, he was brutally attacked by approximately three (3) inmates.



*Plaintiff's injuries sustained in the assault.*

10. The attack resulted in serious injuries to Plaintiff's face, especially his left ear. Specifically, Plaintiff suffered what is known as a "cauliflower ear" on his left ear. This injury is caused by repeated blunt force trauma or damage to the cartilage of the ear.

11. From the day of the incident, Plaintiff's ear injury was apparent as his ear was noticeably swollen.

12. Plaintiff explained that he had been beaten to his mother and to the healthcare unit at Ventress. Plaintiff's mother, who was reasonably scared for his safety and well-being, contacted the ADOC and Ventress several times to inquire into the extent of Plaintiff's injuries and medical care.

13. On or around June 11, 2023, Plaintiff's mother called Ventress and spoke to Captain Lassetter. She was not aware of the extent of Plaintiff's injuries, but she knew that he was unwell.

4

14. On or around June 13, 2023, Plaintiff's mother contacted the ADOC's investigations division and pleaded with them to conduct a welfare check on Plaintiff.

15. Upon information and belief, Plaintiff did not see a medical doctor at Ventress until several days after being assaulted, though his injury was apparent. Upon information and belief, he was only provided with pain medication and no other treatment.

16. On June 29, 2023, weeks after being assaulted, Plaintiff still complained of left ear pain. He complained that the medication he had been given was not helping. Swelling to his left ear, amongst other injuries, were noted.

17. Though his ear was noticeably deformed and swollen, Plaintiff received little-to-no medical care from the medical staff at Ventress. He was given pain medication and nothing more. He was not referred to an outside specialist though it was clearly medically necessary.

18. At some point while at Ventress, a video of Plaintiff's injuries was circulated on a prison advocacy Facebook Group. In the video, Plaintiff explained that he had not been taken to a free world hospital but was instead given very little pain medication and told to ice his ear.

 

*Photos of the viral Facebook video depicting Plaintiff's injuries.*

19. On or around July 3, 2023, roughly a month after the assault, Plaintiff's left ear was drained for the first time.

20. On or around July 6, 2023, Plaintiff was transferred to Bullock where he continued to complain of left ear pain. Objectively, his ear appeared swollen and painful to the touch. However, he was not referred to an outside specialist.

21. For nearly a month, Plaintiff was afforded no real medical care or treatment for his injuries. He was given pain medication and told that his ear would improve with time.

22. Finally, on August 1, 2023, almost two months after the initial injury, Plaintiff was ordered an ENT consult. Medical records noted swelling to Plaintiff's left ear, amongst other injuries. At some point in August of 2023, Plaintiff was transferred to Elmore.

23. On August 12, 2023, medical records noted an "old cauliflower ear" during Plaintiff's body chart.

24. On August 14, 2023, Plaintiff's cauliflower ear was noted once again during a body chart.

25. On August 31, 2023, Plaintiff was seen by Dr. Marc Routman ("Dr. Routman") an ENT specialist at Brookwood Medical Center. The history of present illnesses stated the following:

> 41-year-old male prisoner who was in an altercation with obvious fracture of his ear lobe cartilage and now has cauliflower ear. This about 3-week-old now and we will check and see if this is fluid or solid. The swelling and fracture is partially blocking his ear canals so [h]is hearing is partially obstructed.

26. Further, Dr. Routman detailed the following regarding the extent of Plaintiff's ear deformity:

> So the left earlobe has a big hematoma looking area on the superficial surface on the left and fracture of the cartilage around the anti tragus with additional hematoma in the conchal bowl partially obstructing the external auditory canal. Both of these hematomas feel hard like they are not fluid anymore but rather regrown cartilage and I may have to will this stuff down in order to get him a decent ear and to get it to where it is not blocking his ear canal so he can hear. This will be more of an otoplasty. . ..

27. Dr. Routman noted that Plaintiff was past the ideal window for treatment and that surgery would require a more advanced approach because of the length of time between the incident and the referral to him. Specifically, he stated that surgery was necessary, the ear was so solid that he would have to "will [Plaintiff's] ear down," and the surgery required much more than a simple incision and drainage.

28. On September 7, 2023, a request was made for Plaintiff to have the necessary otoplasty surgery.

29. Plaintiff finally underwent otoplasty surgery on October 11, 2023 – approximately four months after being injured.

30. Throughout this time prolonged time, Plaintiff experienced significant hearing loss, pain and suffering, and emotional distress.

31. Defendant's deliberate indifference, manifested through a pattern, policy, and custom demonstrated by its' medical staff, to Plaintiff's injuries caused permanent hearing loss that could have been prevented if he received proper, prompt, and constitutionally adequate medical care.

   **II.   Defendant's Medical Neglect was a Manifestation of Their Deliberate Indifference in Providing ADOC Inmates with Constitutionally Adequate Medical Care.**

32. Defendant's policies, customs, and practices created an environment where serious medical needs are routinely ignored or minimized, resulting in unnecessary suffering and long-term harm to inmates, including Plaintiff.

33. This pattern of denial and delay affected not just Plaintiff, but other inmates in custody of the ADOC, indicating a corporate practice of deliberate indifference rather than isolated negligence.

34. For example, in October of 2022, an inmate injured his foot while playing basketball at Bibb County Correctional Facility. YesCare allegedly knew of the

inmate's injury and delayed and denied him access to necessary medical treatment. As of October 25, 2024, the inmate still had not received adequate medical treatment.[1]

35. Another inmate at St. Clair Correctional Facility alleged that his medical issues have worsened and that surgery was necessary since March of 2021. Specifically, he alleged that an appliance in his knee had collapsed for many months causing his leg to bow outward. He was only given a brace and no meaningful treatment. Medical staff agreed that surgical repair and knee replacement is necessary, but YesCare refused to treat the inmate as requested causing him needless pain and suffering.[2]

36. In another case, an inmate at Hamilton Aged & Infirmed alleged that YesCare, and its predecessor, denied him medication assisted treatment for his opioid use disorder, which is a recognized disability.[3]

37. Though not nearly exhaustive, these cases serve as illustrations of YesCare's policies, customs, and practices of providing inadequate medical care to those in custody of the State.

---

[1] *See* 6:24-cv-01453-RDP.
[2] *See* 75-CV-2024-900183.
[3] *See* 2:24-cv-00455-ECM-CWB.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND TREATMENT

38. Plaintiff adopts and re-alleges paragraphs 1-3 and 5-37 of this Complaint as if fully set forth herein.

39. As described and depicted more fully above, Plaintiff had an objectively serious medical need. His ear was clearly and visibly deformed when he first presented to Ventress' medical staff in June of 2023. Further, the deformity was obvious, observed, and documented by medical staff at Ventress, Bullock, and Elmore on several occasions.

40. Despite the visibly abnormality of his left ear, Plaintiff was not referred to a qualified medical specialist until August 1, 2023, for medical care and treatment.

41. Between the time of his initial injury and his ENT consultation, Plaintiff complained of pain in his ear but was offered no real solution to remedy his pain. Instead, he was only offered cursory treatment such as pain medication and ice.

42. During this time, Defendant's staff continued to monitor Plaintiff's condition but failed to take any action to facilitate specialist referral, despite knowing that such delay could exacerbate Plaintiff's injury and result in permanent damage. Such

delay and denial of medical treatment was done pursuant to policies, customs, and practices of Defendant.

43. When Plaintiff was finally seen by Dr. Routman on August 31, 2023, he was recommended a medically necessary otoplasty instead of a simple draining of his ear. The delay in treatment worsened Plaintiff's condition.

44. The delay in providing specialist care directly contributed to prolonged pain, unnecessary suffering, permanent physical impairment, and emotional distress.

## STATE CLAIMS

### COUNT II: NEGLIGENCE

45. Plaintiff adopts and re-alleges paragraphs 1-31 of this Complaint as if fully set forth herein.

46. At all times relevant hereto, Defendant was under a contract with the ADOC to provide medical care, treatment, and services to those in custody of state correctional facilities, including Ventress, Bullock, and Elmore.

47. As the contracted medical provider, Defendant had a duty of care to provide timely, adequate, and appropriate medical care and treatment to inmates in accordance with all applicable medical standards of care.

48. From June to August of 2023, Plaintiff presented with a visibly abnormal and worsening "cauliflower ear" – a condition that required prompt medical attention to prevent permanent disfigurement, hearing loss, and pain and suffering.

49. Plaintiff reported pain and lack of improvement with the pain medication provided to medical personnel employed by Defendant.

50. Despite Plaintiff's clear deformity, complaints, and the obvious nature of his condition, Defendant's medical staff, pursuant to policies, customs, and practices of Defendant, failed to timely evaluate, treat, and refer the condition Plaintiff to a specialist who could mitigate the progression of his cauliflower ear.

51. The delay and failure in treatment was not medically justified and constituted a breach of the standard of care.

52. Such negligence directly and proximately caused Plaintiff prolonged pain, unnecessary suffering, permanent physical impairment, and emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the entry of judgement against Defendants, jointly and severally, pursuant to an order awarding:

a. Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

b. Nominal damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C § 1988;

e. Litigation expenses, costs, and pre-judgment and post-judgment interest at the

f. maximum daily interest rate allowable by law; and

g. All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by struck jury on all issues so triable.

*/s/ Kristen E. Gochett*
Kristen E. Gochett
Leroy Maxwell, Jr.
*Attorneys for Plaintiff*

**OF COUNSEL:**
**Maxwell & Tillman**
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
Email: kgochett@mxlawfirm.com
Email: maxwell@mxlawfirm.com

## DEFENDANTS SERVED VIA CERTIFIED MAIL AND/OR PRIVATE PROCESS SERVER.

*/s/ Kristen E. Gochett*
OF COUNSEL
